No. 96-2738

United States of America,      *
                               *
        Appellee,              *
                               *
    v.                         *
                               *
Donald E. McCracken, II,       *
                               *
        Appellant.             *

No. 96-2743

Appeals from the United States
District Court for the
Western District of Missouri.

United States of America,      *
                               *
        Appellee,              *
                               *
    v.                         *
                               *
Donald E. McCracken, III,      *
                               *
        Appellant.             *

Submitted: January 15, 1997
Filed: April 2, 1997

Before WOLLMAN, and HANSEN, Circuit Judges, and MONTGOMERY,[1]      District
Judge.

MONTGOMERY, District Judge.

        Donald E. McCracken, II and Donald E. McCracken, III, appeal their
convictions and sentences on drug charges.  Both defendants challenge the
sufficiency of the evidence to support their

[1]The Honorable Ann D. Montgomery, United States District
Judge for the District of Minnesota, sitting by designation.

convictions and the admission into evidence of statements made by Donald E. McCracken, II. Defendants also contest the district court's[2] application of the two-level enhancement for possession of firearms in connection with a drug offense pursuant to U.S.S.G. § 2D1.1(b)(1). Upon review, we affirm the convictions and the sentences.

## I.    BACKGROUND

On August 27, 1994, Detective Jeffery Seever, working in an undercover capacity for the Jackson County Drug Task Force, was introduced by a contact to Scott Walker for the purposes of purchasing methamphetamine. Walker made a brief phone call and then informed Detective Seever that he could obtain methamphetamine. Walker then directed Detective Seever to drive to 11505 Grandview, Kansas City, Missouri.

Detective Seever and Walker entered the house at 11505 Grandview where defendant Donald E. McCracken, III ("McCracken Junior") was seated on a couch in the living room. McCracken Junior's girlfriend, Carmen Radford, was also present in the house. Walker sat on a chair next to McCracken Junior, while Detective Seever sat on the other side of the room. Walker and McCracken Junior spoke to each other in quiet tones such that Detective Seever could not overhear their conversation. McCracken Junior and Walker then left the living room and walked toward the southeast part of the residence.

A short time later, Walker returned to the living room and presented to Detective Seever a substance which Walker represented

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

to be a half-ounce of methamphetamine. Walker informed Detective Seever that the cost of the methamphetamine was $1,150. Detective Seever paid Walker $650 for his portion of the methamphetamine and Walker returned to the southeast part of the house. Walker eventually returned to the living room with a blue parcel later determined to be methamphetamine wrapped in blue gauze.

Detective Seever and Walker were leaving the residence when Defendant Donald E. McCracken, II ("McCracken Senior") and his girlfriend, Melissa Fox, arrived and entered the residence. McCracken Senior asked Detective Seever and Walker if they had noticed the police car parked in the vicinity of the house. McCracken Senior then advised Detective Seever and Walker that if the police pursued them, they should flee in order to dispose of the methamphetamine. McCracken Senior recommended that "it's better to have a car charge than a Class A or B felony drug charge."

Detective Seever and Walker left the residence and Detective Seever received his portion of the methamphetamine. Detective Seever returned to the Task Force headquarters where the substance was tested and proved to be 7.7 grams of methamphetamine.

Subsequently, on August 29, 1994, Detective Seever obtained a search warrant for 11505 Grandview. The search warrant was executed on September 2, 1994. Six individuals were present at the residence during the search, including McCracken Junior, Melissa Fox and Carmen Radford. McCracken Senior was not present during the search. McCracken Junior was in the living room when officers first entered the residence. From the living room, officers recovered a loaded 9mm pistol and six grams of methamphetamine.

Officers searched the southwest bedroom of the house where they recovered two loaded firearms: (1) an assault rifle mounted over the archway of the bedroom door with one round in the chamber and a magazine holding 31 rounds, and (2) a .45 caliber handgun in a holster nailed to the headboard of the bed containing a magazine loaded with six rounds. Officers also recovered from a heater located a few feet from the bed, four small packages wrapped in blue gauze containing a combined total of 110 grams of methamphetamine. In the bedroom closet officers recovered a box with the name "Don McCracken" on it, as well as men's clothing bearing emblems such as "Shadow," "S and G" and "FYVM." Detective Seever's investigation ultimately determined that "Shadow" was a nickname for McCracken Senior, and that "S and G" and "FYVM" were abbreviations relating to McCracken Senior's business. Officers also discovered photograph albums containing pictures of McCracken Senior as well as a photograph of Melissa Fox on the headboard of the bed.

Officers also searched the northeast bedroom of the residence. Officers discovered a pair of jeans containing $1,420 in United States currency and a billfold holding identification documents of McCracken Junior. The bedroom closet contained two safes. One safe held more than $30,000 in United States currency. The money was divided into three bundles wrapped in blue gauze. The safe also contained an envelope marked "Pistol," a nickname for McCracken Junior, and documents with the name of "Donald E. McCracken, II" on the front cover as well as a key chain marked "Shadow Motorcycle." The second safe contained seven to eight collector's guns. A search of the southeast bedroom revealed a set of electronic scales and multiple rolls of small plastic bags. A safe in the room contained a box labeled "Shadow."

A few months later, on March 10, 1995, Officers conducted a search of 9625 Grandview, Kansas City, Missouri. McCracken Senior was present during the search. A search of the attic area of the residence produced three bags. One bag contained four packages wrapped in black tape. The packages consisted of a total of 110 grams of methamphetamine. The other two bags contained 25 grams of methamphetamine and $5,200 in United States currency.

Officers also searched the northeast bedroom of this residence and discovered a safe containing a book bearing the name "Shadow." Located inside the book was a copy of the earlier search warrant for 11505 Grandview and credit cards imprinted with the name "Donald McCracken" on them as well as the abbreviations "S an G" and "FYVM." Officers discovered a semi-automatic handgun with a loaded magazine hanging over the headboard of the bed. In the living room, officers found a wallet with a Missouri drivers license for "Donald E. McCracken" and $1,060 in United States currency. Officers also discovered 3.9 grams of methamphetamine on the coffee table.

Detective Steve Santoli interviewed McCracken Senior at the residence during the search. McCracken Senior told Detective Santoli that he had been living at 9625 Grandview for approximately two months.

On May 25, 1995, defendants were charged in a five count indictment. Following the trial, McCracken Senior was convicted of conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and two counts of possession with intent to distribute methamphetamine in violation

of 21 U.S.C. § 841(a)(1).[3]  The district court sentenced him to a term of imprisonment of 117 months and five years supervised release.  McCracken Junior was convicted of conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846(a)(1) and aiding and abetting the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  The district court sentenced McCracken Junior to 78 months incarceration and five years supervised release.  Defendants now appeal the convictions and sentences.

## II.  DISCUSSION

### A)    Sufficiency of the Evidence

Both defendants challenge the sufficiency of the evidence with regard to the conspiracy convictions.  McCracken Junior also challenges the sufficiency of the evidence with respect to his conviction of aiding and abetting distribution of methamphetamine.  McCracken Senior similarly contends the evidence was insufficient with respect to his convictions for possession with intent to distribute methamphetamine.

In reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the verdict.  United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996) (citing United States v. Bascope-Zurita, 68 F.3d 1057, 1060 (8th Cir. 1995), cert. denied, __ U.S. __, 116 S.Ct. 741, 133 L.Ed.2d 690 (1996)).  The verdict is given the benefit of all reasonable inferences that

---

[3]The district court entered a judgment of acquittal notwithstanding the verdict as to a charge of use and carrying of firearms in violation of 18 U.S.C. § 924(c).

could have been drawn from the evidence presented.  Id.  "Reversal is appropriate only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essentials elements."  Id. (internal quotations omitted).

In order to prove the existence of a conspiracy, "'the government must show an agreement between at least two people and that the agreement's objective was a violation of the law.'"  Jenkins, 78 F.3d at 1287 (quoting United States v. Escobar, 50 F.3d 1414, 1419 (8th Cir. 1995)).  This agreement may be proved by either direct or circumstantial evidence.  Id.  In fact, proof of the agreement often must be implied from the surrounding circumstances.  Escobar, 50 F.3d at 1419.

The government introduced sufficient evidence against defendants establishing a conspiracy between both defendants and Walker.  Walker brought Detective Seever to 11505 Grandview for the express purpose of purchasing methamphetamine.  McCracken Junior was present at the residence and accompanied Walker to the southeast part of the house from where Walker returned with methamphetamine.  The search of the residence later revealed methamphetamine, scales and plastic baggies in the southeast and southwest bedrooms.  As Detective Seever and Walker left the residence with the methamphetamine, McCracken Senior arrived at the house.  McCracken Senior then immediately warned Detective Seever and Walker about the presence of a police car and advised them to dispose of the methamphetamine if pursued by police officers.

The government also presented evidence that both defendants resided at 11505 Grandview.  McCracken Senior's daughter testified that both defendants lived at 11505 Grandview in August and September of 1994.  The southwest bedroom contained personal

possessions of McCracken Senior and in that bedroom officers recovered methamphetamine wrapped in blue gauze and two loaded firearms. Possessions belonging to McCracken Junior were found in the northeast bedroom where officers discovered a safe containing $30,000 divided in three bundles wrapped in the characteristic blue gauze. The methamphetamine earlier purchased by Detective Seever had also been wrapped in blue gauze. When viewed in a light most favorable to the verdict, the evidence presented at trial of the events on August 27, 1994 and the seizure of methamphetamine, money, guns and scales from a residence occupied by both defendants was sufficient to support the jury's conclusion that the defendants were involved in a conspiracy to distribute methamphetamine.

McCracken Junior alleges there was insufficient evidence to support his conviction for aiding and abetting the distribution of methamphetamine. To sustain a conviction for aiding and abetting with intent to distribute drugs, the government must prove: "'(1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed.'" United States v. Duke, 940 F.2d 1113, 1117 (8th Cir. 1991) (quoting United States v. Lanier, 838 F.2d 281, 284 (8th Cir. 1988)).

In examining the evidence in the light most favorable to the government, the facts sufficiently establish that McCracken Junior associated and then participated with Walker in distributing methamphetamine. Walker brought Detective Seever to a residence where McCracken Junior was present for the purpose of purchasing methamphetamine. Walker talked with McCracken Junior, left the living room with McCracken Junior, and then returned with a sample of methamphetamine for Detective Seever. Detective Seever gave Walker some money, Walker returned to the southeast portion of the house and then returned with the methamphetamine wrapped in blue

gauze.  This configuration of physical movements and exchange of money is strong circumstantial evidence from which a jury could reasonably find McCracken Junior to be Walker's source of supply for the methamphetamine. The evidence is sufficient to support McCracken Junior's conviction on aiding and abetting with intent to distribute methamphetamine.

McCracken Senior contends that insufficient evidence exists to support his conviction on two counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). McCracken Senior was charged with possession of the methamphetamine seized from 11505 Grandview on September 2, 1994 and the methamphetamine seized from 9625 Grandview on March 10, 1995.  McCracken Senior specifically argues that the government did not sufficiently provide evidence that he possessed the methamphetamine.

To convict McCracken Senior on a violation of 21 U.S.C. § 841(a)(1), the government had to prove that he knowingly possessed the methamphetamine with the intent to distribute.  United States v. Ojeda, 23 F.3d 1473, 1475 (8th Cir. 1994) (citing United States v. Brett, 872 F.2d 1365, 1369 (8th Cir. 1989)).  Proof of constructive possession is sufficient to satisfy the element of knowing possession.  United States v. Perkins, 94 F.3d 429, 436 (8th Cir. 1996) (citing United States v. Townley, 942 F.2d 1324, 1325 (8th Cir. 1991)).  Constructive possession of drugs can be established if a person has "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed."  Ojeda, 23 F.3d at 1475 (citing United States v. Schubel, 912 F.2d 952, 955 (9th Cir. 1990)).

There is sufficient circumstantial evidence to support a conclusion that McCracken Senior constructively possessed the

methamphetamine. The government produced testimony from McCracken Senior's daughter that in August and September of 1994, McCracken Senior lived at 11505 Grandview. The methamphetamine seized from 11505 Grandview was recovered from a bedroom containing various possessions belonging to McCracken Senior. With respect to the 110 grams of methamphetamine seized from 9625 Grandview, McCracken Senior informed Detective Santoli that he lived at 9625 Grandview. Further, personal items with McCracken Senior's nickname "Shadow" were recovered from a safe located in a bedroom at 9625 Grandview. In both instances, the testimony and evidence supports the jury's verdict that McCracken Senior had sufficient dominion over the premises to establish constructive possession of the methamphetamine.

B)      **Enhancement for Possession of Firearms**

Both defendants contend that there was insufficient evidence of an adequate nexus between the guns seized and the alleged criminal activity to support the district court's enhancement of their offense levels by two points pursuant to U.S.S.G. § 2D1.1(b)(1).

Federal Sentencing Guideline § 2D1.1(b)(1) calls for an increase of two levels to a person's base offense level for some drug related crimes when "a dangerous weapon (including firearm) was possessed." See United States v. Payne, 81 F.3d 759, 763 (8th Cir. 1996). Application Note 3 to the guidelines explains that: "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. The government bears the burden of proving by a preponderance of the evidence that the weapon was present and that it is probable that the weapon was connected with the drug

charge.  Id. (quoting United States v. Hayes, 15 F.3d 125, 127 (8th Cir.), cert. denied, __ U.S. __, 114 S.Ct. 2718, 129 L.Ed.2d 843 (1994)).

Lack of proof of use or actual possession does not prohibit a § 2D1.1(b)(1) adjustment; enhancement for weapons possession may be based on constructive possession, which includes ownership, dominion, or control over the item, or dominion over the premises.  United States v. Luster, 896 F.2d 1122, 1129 (8th Cir. 1990) (citations omitted).  A district court's determination that a defendant possessed a firearm for purposes of a § 2D1.1(b)(1) enhancement will be reversed only if the decision was clearly erroneous.  Id.

The government placed into evidence three loaded firearms seized from a residence where both McCracken Senior and McCracken Junior resided.  Two of the firearms were found in a room that the government established to be McCracken Senior's bedroom.  Located in this bedroom was also 110 grams of methamphetamine.  McCracken Junior was present in the residence during the search when the officers seized the three firearms and the methamphetamine.  More specifically, McCracken Junior was present in the living room where officers seized a loaded firearm within close proximity of six grams of methamphetamine.  The district court's application of the two level enhancement was not clearly erroneous, accordingly, we affirm the district court's determination.

**C)  Admission of Statements Made by McCracken Senior**

Defendants contend that the district court abused its discretion in admitting into evidence McCracken Senior's statements of August 27, 1994 where he warned and advised Detective Seever and

Walker about the presence of a police car near the residence. Defendants maintain that the admission of these statements violated their Sixth Amendment right of confrontation. Defendants argue that the statements are hearsay which fall outside the co-conspirator exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(E). Moreover, defendants assert that the trial court erred by failing to make the proper Bell findings before ultimately admitting the statements into evidence. United States v. Bell, 573 F.2d 1040 (8th Cir. 1978) (establishing the procedure for the admission of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E)).

We review a district court's determination to admit evidence under the deferential abuse of discretion standard. United States v. Johnson, 28 F.3d 1487, 1498 (8th Cir. 1994), cert. denied, __ U.S. __, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995),(citing United States v. Layne, 973 F.2d 1417, 1421-22 (8th Cir. 1992), cert. denied, __ U.S. __,113 S.Ct. 1011, 122 L.Ed.2d 160 (1993)). Unless there is a clear and prejudicial abuse of discretion, the district court's decision will be affirmed. Id.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement of a co-conspirator is admissible if the trial court determines by a preponderance of the evidence that "the statement was made during the course and in furtherance of a conspiracy to which the declarant and the defendant were parties." United States v. Roulette, 75 F.3d 418, 425 (8th Cir.), cert. denied, __ U.S. __, 117 S.Ct. 147, 136 L.Ed.2d 93 (1996) (citations omitted). As explained by the Court in Bell, the trial court may conditionally admit the hearsay statements of alleged co-conspirators, subject to a final ruling on the record that the statements are admissible pursuant to the co-conspirator exception to the hearsay rule. Id. The procedures outlined in Bell are

flexible and do not require reversal for failure to follow those procedures absent a showing of prejudice.  Id.  If the record indicates that a defendant failed to specifically request a Bell ruling, but made a motion for acquittal, we will consider the district judge's denial of the acquittal motion as substantial compliance with the Bell holdings, and employ a plain-error standard of review.  United States v. Ortiz-Martinez, 1 F.3d 662, 673 (8th Cir.), cert. denied, 510 U.S. 936, 114 S.Ct. 355, 126 L.Ed.2d 319 (1993).

As previously addressed, the government sufficiently established the existence of a conspiracy involving both defendants.  McCracken Senior's comments were statements of warning and advice regarding the possession of drugs.  Such comments are not idle conversation or insignificant declarations.  It is clear that the statements made by McCracken Senior, as related at trial by Detective Seever, were made during the course and in furtherance of the conspiracy.  As such, the statements were admissible pursuant to Rule 801(d)(2)(E).

Defendants admit they did not make an explicit request for a Bell finding at the end of trial.  Defendants did, however, assert an ongoing objection to the admission of co-conspirator statements and argued a motion for judgment of acquittal.  The district court denied the motion.  We infer from the denial of the acquittal motion the requisite Bell findings and review for plain error.  In light of the evidence establishing a conspiracy, we do not find plain error in the admission of the testimony, and concomitantly, that defendants were not prejudiced by the district court's failure to follow Bell procedures.

Defendants maintain that the admission of McCracken Senior's conspiratorial statements violated McCracken Junior's rights

-13-

pursuant to <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620, 20 Led.2d 476 (1968).  The Supreme Court in <u>Bruton</u> explained that a nontestifying codefendant's confession expressly incriminating the defendant introduced at a joint trial, violates that defendant's Sixth Amendment right of confrontation.  <u>Bruton</u>, 391 U.S. at 135-136, 88 S.Ct. at 1627-1628. <u>Bruton</u>, however, does not mandate the exclusion of all statements made by a codefendant; if the codefendant's statement does not incriminate the defendant, <u>Bruton</u> does not apply.  <u>United States v. Flaherty</u>, 76 F.3d 967, 972 (8th Cir. 1996)(citing <u>Escobar</u>, 50 F.3d at 1422).  The statements made by McCracken Senior do not incriminate McCracken Junior.  The district court's decision to admit into evidence the statements made by McCracken Senior is affirmed.

**III.  CONCLUSION**

For the foregoing reasons, we affirm defendants' convictions and sentences.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-