# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2783

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Mario Castillo, also known as Mario | * | |
| Rosales, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 15, 1998

Filed: March 26, 1999

_____

Before BEAM and LOKEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

BEAM, Circuit Judge.

Mario Castillo was charged with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and aiding and abetting the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. After

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

hearing the evidence presented by both sides during trial, the district court[2] granted Castillo's motion for judgment of acquittal on the conspiracy charge but denied the motion with respect to the aiding and abetting charge. The jury returned a verdict of guilty on the aiding and abetting count. Castillo then filed a post-trial motion for a new trial based on newly discovered evidence, a judgment of acquittal, and/or a new trial in the interest of justice. The district court denied the motion. On appeal, Castillo argues that his conviction was based on insufficient evidence, and alternatively, that the trial court erred in denying his motion for a new trial on the basis of newly discovered evidence. We affirm.

## I.    SUFFICIENCY OF THE EVIDENCE

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. See United States v. McCracken, 110 F.3d 535, 540 (8th Cir. 1997). We give the government the benefit of all reasonable inferences that could logically be drawn from the evidence. See United States v. Smith, 104 F.3d 145, 147 (8th Cir. 1997). We must uphold the verdict if the evidence so viewed is such that there is an interpretation of the evidence that would allow a reasonable-minded jury to find Castillo guilty beyond a reasonable doubt. See id.

Castillo's arrest stemmed from an undercover investigation into the distribution of illegal narcotics by his half-brother, Rogelio Rosales. The December 11, 1997, transaction that led to Castillo's arrest and conviction was the first in a series of drug deals that took place between special agent Jon Neuschwanger and Rosales.[3] The evidence, viewed in the light most favorable to the verdict, supports the following version of events concerning that transaction.

---

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, presiding.

[3]Castillo was not involved in any of these later drug transactions.

On December 11, 1997, Neuschwanger placed a call to Rosales to set up a purchase of methamphetamine. When Neuschwanger arrived at Rosales's residence later that day, he was met by Castillo, who instructed him to come inside and wait for Rosales. Prior to this time, Neuschwanger had never met Castillo. Rosales arrived shortly thereafter and instructed Neuschwanger to meet him later in the parking lot of a local Hy-Vee grocery store. Rosales then left the house but returned five minutes later at which time he had a conversation in Spanish with Castillo.[4] He then left again.

A short while later, Neuschwanger got up to leave and told Castillo, "I'll see you later," at which point Castillo responded, "No, I'm coming with you." Neuschwanger testified at trial that Castillo's statement was more of a demand than a request. Castillo told Neuschwanger that they were headed to a Mexican bar. When Neuschwanger asked whether or not they were going to the Hy-Vee, Castillo answered in the negative. Upon arriving at the bar, they found it to be closed, at which point, Castillo went across the street to a Mexican restaurant and grocery store. Finding Rosales there, he immediately came back out and motioned for Neuschwanger to come inside.

Once inside the restaurant, Neuschwanger sat at a booth with Rosales and another man. Castillo sat across from them at another booth. During the time they were in the restaurant, Rosales spoke with Castillo in Spanish, and Castillo got up three times to go to the grocery store portion of the restaurant. After the first two trips, Castillo returned and gestured to Rosales with his hand or head as if to indicate "nothing." After the third trip, Castillo looked at Rosales and tilted his head backwards as if to indicate that someone had arrived. Thereafter, an unidentified male came into the restaurant and sat down at the booth with Castillo. After the man's

---

[4]Neuschwanger does not speak or understand Spanish.

arrival, the conversation was all in Spanish. Neuschwanger couldn't recall specifically if Castillo also took part in the conversation.

Castillo then instructed Neuschwanger to come with him across the street to a billiards hall. After about fifteen minutes in the billiards hall, Neuschwanger asked Castillo how much longer it would be before the "stuff" arrived and Castillo responded something to the effect of "in a few minutes." After about ten minutes, Castillo looked out a side door, which was different from the door through which they had entered the building. A short while later, Rosales arrived through the same door, and he and Neuschwanger stepped outside to set up the sale. Castillo stayed inside the building.

On appeal, Castillo argues that there was insufficient evidence to support his conviction for aiding and abetting the distribution of methamphetamine. He stresses that the evidence shows that neither Neuschwanger, nor anyone else, ever mentioned anything about the sale of drugs in his presence; that the actual sale was made out of his presence; and that, in essence, he was only an innocent bystander.

To sustain a conviction for aiding and abetting with intent to distribute drugs, the government must prove: (1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed. See McCracken, 110 F.3d at 540. In examining the evidence in the light most favorable to the verdict, we find that the facts sufficiently establish that Castillo associated and then participated with Rosales in distributing methamphetamine.

Castillo escorted Neuschwanger, a man he had never met before, all around town until Rosales was able to show up with the drugs. His actions at the restaurant are consistent with those of someone acting as a lookout. At the billiards hall, Castillo checked a side door, which was a different door from the one he and

-4-

Neuschwanger had entered. Furthermore, Castillo answered Neuschwanger's query about when the "stuff" would arrive by responding "in a few minutes." Although Castillo's testimony on the last point conflicts with Neuschwanger's, we are mindful that the jury was charged with the duty of resolving such conflicts. Furthermore, Castillo testified at trial that he and his brother were close, that he visited his brother's house several times each week, that he had heard rumors in the community about Rosales being a drug dealer, and that Rosales himself had even told Castillo that this was the case. Viewing the evidence in the light most favorable to the verdict, we find there was sufficient evidence to support Castillo's conviction on aiding and abetting the distribution of methamphetamine.

## II.    MOTION FOR NEW TRIAL

Castillo also argues, in the alternative, that the district court erred in denying his motion for a new trial on the basis of newly discovered evidence. The alleged newly discovered evidence is side A of the surveillance audio tape recording of the transaction. Side A of the tape contains the recording of a majority of the transaction including the events at Rosales's residence and the restaurant. The material on side B contains the end portion of the drug transaction. For some reason, not altogether clear from either the record or oral argument, when the original tape was copied and turned over to the government by the drug task force that made the recording, only side B was copied. Castillo received two copies of the original tape from the government—each with recording on only side B.

On March 2, 1998, the district court ordered the government to produce the original tape for review and enhancement by Castillo's expert. Castillo wanted to verify the authenticity of the tape. On March 20, 1998, the original tape was turned over to Castillo who sent it off to his own expert. The expert sent his enhanced tape recording back on April 3, 1998. Castillo did not actually receive it until April 6, 1998, the first day of trial. Castillo's counsel and an interpreter hired by the court,

then reviewed the enhanced tape recording. By Castillo's own admission, both in the brief and at oral argument, his counsel reviewed only side B of the tape, and upon finding it to contain the same material as previously heard on the last two copies, did not listen any further. In other words, side A of the tape was never examined. No portion of the tape was ever introduced at trial. The day after the trial, after speaking with the expert on the telephone, Castillo's counsel was prompted to review the enhanced recording again, whereupon he learned for the first time that there was a recording on side A.

In this circuit, it is well-established that there are five prerequisites which must ordinarily be met to justify a new trial on the ground of newly discovered evidence: (1) the evidence must in fact be newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal. See United States v. Luna, 94 F.3d 1156, 1161 (8th Cir. 1996). Moreover, the denial of a motion for new trial based on newly discovered evidence is within the broad discretion of the trial court, and the trial court's decision will not be reversed absent a clear abuse of discretion. See id.

Castillo argues that a transcript of side A of the tape proves that there was no conversation in Spanish in his presence concerning the drug transaction. He contends that given the limited evidence on which he was convicted, allowing the jury to consider the tape and transcript of side A would probably result in acquittal. The district court disagreed, finding it was Castillo's actions rather than any possible Spanish conversations that provided the basis for the jury's verdict. We agree with the district court's conclusion.

We note that it is questionable whether Castillo has established "due diligence" in light of the failure to examine both sides of the tape. While there appears to be no published authority on the subject, we think it is common sense that one should listen to both sides of a tape, especially after one has gone to the trouble of having the tape enhanced by an expert. The only justification presented for the failure to ascertain the total contents of the tape is that when counsel listened to side B and found it to be identical to the two prior copies, he assumed that side A was still blank. We do not believe this assumption excuses the failure to review the tape in its entirety. "Due diligence requires that a defendant exert some effort to discover the evidence." United States v. Jaramillo, 42 F.3d 920, 925 (5th Cir. 1995).

Even assuming due diligence, however, we conclude that Castillo has not established that the recording on side A would probably result in acquittal on retrial. Castillo argues that side A is significant because it reinforces his testimony that he had no knowledge about the drug transaction. However, the record shows that the government's argument at trial was not that Castillo's knowledge of the drug transaction could be inferred from anything that was specifically said or not said to him, but rather that it could be inferred from Castillo's affirmative actions and other background factors, i.e., his awareness that his brother had a reputation as a drug dealer, his following Neuschwanger around town, and his actions at the restaurant and billiards hall. In fact, Neuschwanger testified that as far as he knew, neither he nor Rosales ever mentioned anything about drugs in Castillo's presence. Thus, even if we assume that side A shows exactly what Castillo claims it does, that there was no conversation, even in Spanish, about the drug transaction, it would add nothing of significance to the evidence considered by the jury. We find the trial court did not abuse its discretion by failing to grant a new trial.

## III.    CONCLUSION

For the foregoing reasons, we affirm Castillo's conviction and conclude that the district court properly denied the motion for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.