# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-4157

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Carla Grace Engler, | * |
| | * |
| Appellant. | * |

_____

No. 07-1104

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Michael Thomas Gatena, | * |
| | * |
| Appellant. | * |

_____

Submitted: September 25, 2007
Filed: April 9, 2008 (corrected 4/15/08)

_____

Before BYE, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following the district court's[1] denial of their motions to suppress evidence, Carla Grace Engler and Michael Thomas Gatena were convicted by a jury. Engler was convicted of: (1) conspiracy to manufacture 50 grams or more of pure methamphetamine ending in June of 2005; (2) manufacture and attempted manufacture of 5 grams or more of pure methamphetamine within 1,000 feet of a school on December 30, 2004; (3) possession of red phosphorus with intent to manufacture methamphetamine on January 30, 2005; (4) manufacture and attempted manufacture of 5 grams or more of pure methamphetamine within 1,000 feet of a school on June 5, 2005; and (5) failure to appear for trial on October 24, 2005. Gatena was convicted of: (1) conspiracy to manufacture 50 grams or more of pure methamphetamine within 1,000 feet of a school while on pretrial release, ending in June of 2005, (2) manufacture and attempted manufacture of 50 grams or more of pure methamphetamine on November 18, 2004, (3) manufacture and attempted manufacture of 5 grams or more of pure methamphetamine within 1,000 feet of a school on December 30, 2004, and (4) manufacture and attempted manufacture of 5 grams or more of methamphetamine within 1,000 feet of a school while on pretrial release on June 5, 2005. Engler was sentenced to a stipulated term of 361 months imprisonment. Gatena was sentenced to 470 months imprisonment. From their convictions, Engler and Gatena appeal. Additionally, Gatena appeals his sentence. The appeals are consolidated. We affirm the convictions and Gatena's sentence.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

I.

We recite the facts in the light most favorable to the jury's verdicts. United States v. Honoarvar, 477 F.3d 999, 1000 (8th Cir. 2007). Engler and Gatena were involved in the manufacture, attempted manufacture and conspiracy to manufacture methamphetamine. At some time prior to meeting Engler, Gatena started making methamphetamine. Engler joined him in the manufacture of methamphetamine in 2004. In 2004, Engler and Gatena were a couple living in the same residence. Gatena was the "cook" who manufactured the methamphetamine and Engler's role was to organize the other participants and obtain the precursors for Gatena's use in the manufacture. They used the red phosphorus method of making methamphetamine. For this method, some of the necessary supplies include: pseudoephedrine, which can be obtained from over-the-counter sinus medications; red phosphorus, which can be obtained by removing the striker plate from matchbooks that have been soaked in Heet[2] or isopropyl alcohol; and iodine crystals, which can be made using hydrogen peroxide, muriatic acid, and iodine. Engler and several other people visited numerous grocery stores, discount stores and pharmacies to obtain products containing the needed supplies. Once the supplies were obtained, Gatena would make the methamphetamine while Engler and the others waited in another part of the residence. Gatena's children were present in the home while Gatena manufactured the methamphetamine. The other people who helped them obtain the precursors would be paid with a portion of the final product of the methamphetamine "cook".

Prior to their arrest, Engler and Gatena lived together at an apartment located at Mud Lake on Rock Grove Court and later at a house located at 101 East 29th Street in Dubuque, Iowa. Following their move to the 29th Street residence, Gatena

---

[2]Heet is the brand name of a fuel additive which is designed for use as a gas-line antifreeze and water remover. It is also commonly used in the manufacture of methamphetamine.

continued to maintain his access to the apartment at Mud Lake on Rock Grove Court. Gatena "cooked" the methamphetamine at both the 29th Street and Rock Grove Court addresses. The evidence established that Gatena stored, manufactured, and sold methamphetamine at each of the residences which he shared with Engler.

After receiving information about the manufacture of methamphetamine by Engler and Gatena, law enforcement officers obtained search warrants for the two residences shared by Engler and Gatena on three different occasions. Engler and Gatena were subsequently indicted and arrested. Following the denial of their motions to suppress evidence, they were tried by a jury and convicted.

II.

Engler argues that the district court erred in denying her motion to suppress evidence obtained during the execution of three search warrants at the residence she and Gatena shared at 101 East 29th Street, Dubuque, Iowa, as well as the January 30, 2005, warrantless search of her person and Gatena's vehicle, which Engler was driving.

The search warrants on Engler's residence were served on November 18, 2004; December 30, 2004; and June 5, 2005. Engler argues that the search warrant of November 18, 2004, was obtained based on a defective affidavit and that the district court erred in denying her request for an evidentiary hearing under Franks v. Delaware, 438 U.S. 385 (1978). Further, Engler alleges that the evidence obtained as a result of the execution of the December 30, 2004, search warrant at her home should have been suppressed due to errors in the application for search warrant. Engler also argues that all evidence seized as a result of the execution of the subsequent June 5, 2005 search warrant should have been suppressed as "fruit of the

poisonous tree" because the basis for this search warrant was evidence and information obtained as a result of the allegedly improper search warrants of November 18, 2004, and December 30, 2004. Additionally, Engler contends that the warrantless canine and inventory searches of the vehicle she was driving on January 30, 2005, were improper because the government failed to offer sufficient proof to establish the existence of probable cause or an inventory exception to the general prohibition against a search absent probable cause. Finally, Engler asserts that the trial court erred by failing to follow the procedure established in United States v. Bell, 573 F.2d 1040 (8th Cir. 1978), with respect to out-of-court coconspirator statements.

Gatena raises three issues on appeal. Like Engler, Gatena asserts that the district court erred in failing to comply with the procedures set forth in Bell.[3] Additionally, Gatena argues that there was insufficient evidence to establish that he aided and abetted the manufacture of 50 grams or more of methamphetamine on December 30, 2004. Lastly, Gatena avers that the district court erred when it determined the drug quantity for which Gatena was held accountable for purposes of determination of his offense level and sentence.

III.

We find that the searches were supported by probable cause, and the district court properly denied Engler's motion to suppress as well as her request for a Franks hearing. On appeal of a motion to suppress, we review the factual findings for clear error, and the legal findings are reviewed de novo. United States v. Bell, 480 F.3d

---

[3]Although they make the same legal argument with respect to Bell, only Engler argues that the trial court improperly admitted oral statements of coconspirators, while Engler and Gatena argue that the trial court improperly admitted photographic images of text messages sent via cellular telephone.

860, 863 (8th Cir. 2007). We review the denial of a <u>Franks</u> hearing for abuse of discretion. <u>United States v. Snyder</u>, 511 F.3d 813, 816 (8th Cir. 2008).

We first address Engler's arguments concerning the November 18, 2004, search of the 29th Street residence. To prevail in her request for a <u>Franks</u> hearing, Engler must demonstrate that a law enforcement official either recklessly or deliberately included a false statement in the affidavits in support of the search warrants or omitted a truthful statement from the affidavits. <u>United States v. Brown</u>, 499 F.3d 817, 821 (8th Cir. 2007), <u>cert. denied</u>, No. 07-7292, 2008 WL 423700 (U.S. Feb. 19, 2008). Further, Engler "must make a substantial preliminary showing of a false or reckless statement or omission and must also show that the alleged false statement or omission was necessary to the finding of probable cause." <u>United States v. Gabrio</u>, 295 F.3d 880, 883 (8th Cir. 2002). Such a showing is not easily made. <u>Id.</u> Engler must show that if the allegedly unsupported content in the warrant affidavit is ignored, the remaining contents of the affidavit would not be enough to establish probable cause. <u>Brown</u>, 499 F.3d at 821. We agree with the district court's analysis that Engler cannot establish the requisite preliminary showing of a false or reckless statement or omission which was necessary to a finding of probable cause. Likewise, Engler failed to establish that if the allegedly unsupported information is ignored the remainder of the information presented in support of the search warrant would be insufficient to establish probable cause.

Engler challenges the denial of her request for a <u>Franks</u> hearing asserting that law enforcement officers deliberately or recklessly: (1) failed to verify the information provided by a confidential informant; (2) failed to attach information on one of the two confidential informants; (3) used a confidential informant upon whose information no prior arrests were based; (4) omitted addresses from paragraphs 2 through 8 of the affidavit; and (5) omitted statements indicating that Engler and Gatena were no longer romantically linked. We cannot find that the district court erred. Engler made these assertions without any supporting proof that they are

accurate. She provided no evidence to establish that law enforcement officers deliberately or recklessly omitted information in an attempt to mislead the issuing judicial officer. Moreover, Engler did not provide an explanation for the absence of such evidence. She failed to make a preliminary showing that a <u>Franks</u> hearing was necessary and therefore the denial of the hearing was appropriate. If we were to assume that Engler satisfied the first requirement for obtaining a <u>Franks</u> hearing, her argument would still fail at the second step because the affidavits established probable cause even absent the challenged information.

Engler next asserts that because of the alleged omissions referenced above, the November 18, 2004, search warrant was not supported by probable cause. Based upon a thorough review of the affidavits in support of the search warrant application, we find that the totality of the circumstances set forth in the application for the search warrant of November 18, 2004, supported the finding of probable cause and sufficiently established that the confidential informant was reliable. The attached information sheet indicates that the confidential informant had supplied reliable information in the past on multiple occasions, had not given false information in the past and had no motive to falsify information in this case. Therefore, there was sufficient proof of the informant's reliability. <u>See</u> <u>United States v. Sumpter</u>, 669 F.2d 1215, 1220 (8th Cir. 1982).

With regard to the December 30, 2004 search, Engler argues that the district court erred in denying her motion to suppress evidence seized from her home during that search because the search warrant was based on the allegedly impermissible search of November 18, 2004. Engler also argues on appeal that because factual errors appear in the Magistrate Judge's report and recommendation, the affidavit for search warrant must also have been confusing to the issuing judicial officer. Although

factual errors appear in the Magistrate Judge's report and recommendation[4], the affidavit for search warrant which was presented to and relied upon by the issuing judicial officer, did not contain such errors[5]. Accordingly, the affidavit before the issuing judge was not clearly in error and provided sufficient probable cause to justify the issuance of the search warrant for Engler's residence.

Engler argues that the district court erred in denying her motion to suppress evidence seized during the June 5, 2005 search of her residence because this warrant was based on evidence or information obtained as a result of the prior allegedly unconstitutional searches, and would therefore be "fruit of the poisonous tree." We have already found that Engler's rights were not violated during the two previous searches. However, if the information from those searches was removed from the affidavit in support of the June 5, 2005 search warrant, there would still be more than enough information remaining to establish probable cause for the issuance of the search warrant. The additional evidence included in the affidavit, such as the June 2005 information regarding methamphetamine activity by Engler, pre-cursors found in the mini-van outside her residence, and Engler's trips between her home and the mini-van immediately preceding police arrival, establish probable cause for the issuance of that search warrant.

In sum, Engler has failed to establish that probable cause was lacking for the issuance of any of the three search warrants or that there was evidence to warrant a <u>Franks</u> hearing. She produced no evidence of intentional misconduct or misstatement,

---

[4]The Magistrate Judge's report and recommendation erroneously stated that the complete red phosphorus lab was located at Gatena's Rock Grove Court address, when in fact the complete red phosphorus lab was discovered at Engler's 29th Street residence.

[5]This confusion on the part of the Magistrate Judge may have been caused by the fact that two independent search warrants were simultaneously executed at both the 29th Street and Rock Grove Court addresses on November 18, 2004.

or any other evidence that directly controverts any of the information contained in the three affidavits for search warrants.

We now turn to Engler's attack on the search of the vehicle she was driving on January 30, 2005. Law enforcement officers are required to have probable cause to search a vehicle without a search warrant. United States v. Donnelly, 475 F.3d 946, 954 (8th Cir.), cert. denied, 127 S. Ct. 2954 (2007). Probable cause is not the requisite evidence necessary to support a conviction. Id. Rather, probable cause is the "fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quoting Gates, 462 U.S. at 238). In order to determine if probable cause exists, the totality of the circumstances must be assessed using a "common sense approach." United States v. Valle Cruz, 452 F.3d 698, 703 (8th Cir. 2006).

We find that there was probable cause to search the vehicle Engler was driving on January 30, 2005. Officers were aware that Engler's license to drive was suspended. Therefore, they legitimately arrested her after observing her operate a motor vehicle. Thereafter, a canine sniff of the exterior of the vehicle was conducted and the dog alerted giving the officers probable cause to search the vehicle. See United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999) (When a canine officer alerts on the exterior of a vehicle, the police officers then have probable cause to search the vehicle without the necessity of obtaining a search warrant). Further, at the request of the owner of the parking lot, the vehicle was towed away following Engler's arrest. Prior to the vehicle being towed, the officers conducted an inventory search of the vehicle, as was required by the police department policy. It is permissible for an officer to conduct an inventory search pursuant to department policy prior to a vehicle being towed, protecting both the vehicle owner and the officers. See United States v. Mayfield, 161 F.3d 1143, 1145 (8th Cir. 1998) ("The intrusion is justified by governmental interests in protecting the owner's property while it remains in police custody, in protecting the police against claims or disputes over lost or stolen property, and in protecting the police from

potential danger."). Engler's argument that there was insufficient evidence of the police agency's inventory policy is without merit. At the suppression hearing, Officer Michael Kane testified that the Dubuque Police Department has a written policy for inventory searches of vehicles subject to a private property tow. Officer Kane identified the government's exhibit 4 as the impound sheet from the private property tow of Gatena's truck following Engler's arrest for driving on a suspended drivers license. The impound sheet was prepared in compliance with the written department policy and was admitted as evidence at the suppression hearing. An officer's testimony that the inventory search was performed within the police department's policy is sufficient. See United States v. Betterton, 417 F.3d 826, 830 (8th Cir. 2005) (policy not required to be in writing and officer testimony as to policy is sufficient).

IV.

Engler challenges the district court's admission into evidence of several out-of-court statements presented via the testimony of two witnesses. Nicole Leick testified that, using money provided by Engler and Gatena, she obtained matches and pseudoephedrine pills for Gatena's use in the manufacture of methamphetamine and that she saw Engler process the pills for subsequent use in methamphetamine production. Leick testified that Gatena identified a room of the Mud Lake home as "the cook room." Engler's hearsay objection to this statement was overruled without analysis or explanation by the district court.

Subsequently, Engler asserted hearsay objections to two other responses by Leick. The first was her testimony that Gatena, carrying a container of ingredients used in the manufacture of methamphetamine, stated that he was going home, and the second was her denial that Gatena had told her what he did with the methamphetamine that he had made.

-10-

Martin Junger testified that he has consumed methamphetamine manufactured by Gatena, that Gatena has assisted him in the manufacture of the substance, and that he had obtained precursors to the manufacture of methamphetamine with Engler. Over Engler's hearsay objection, Junger testified that Gatena told him that during the search of November 18, 2004, authorities "found a cook going on at his house," and that he had been stopped by police with a bowl used to smoke methamphetamine and a "full lab" in his vehicle, but that these items were not discovered.

The district court's decision to admit evidence is reviewed on appeal under the deferential abuse of discretion standard. United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997). The district court's decision will be affirmed unless there is a "clear and prejudicial abuse of discretion." Id.

Here, Engler asserts that the district court abused its discretion in admitting the testimony noted above as the statements are hearsay and fall beyond the parameters of the coconspiratorhearsay exception of Federal Rule of Evidence 801(d)(2)(E), and that the district court failed to follow the procedure outlined in Bell, 573 F.2d at 1043-44 (setting forth the procedure to be follow with respect to the admission of coconspiratorstatements under Federal Rule of Evidence 801(d)(2)(E)).

"Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement of a co-conspirator is admissible if the trial court determines by a preponderance of the evidence that 'the statement was made during the course and in furtherance of a conspiracy to which the declarant and the defendant were parties.'" McCracken, 110 F.3d at 542 (quoting United States v. Roulette, 75 F.3d 418, 425 (8th Cir. 1996)). Pursuant to Bell, testimony as to an out-of-court statement of an alleged coconspirator may be conditionally admitted as a coconspirator statement, provided that the district court makes a determination at the end of the trial as to whether the government demonstrated by a preponderance of the evidence that (1) a conspiracy existed; (2) the

-11-

defendant and the declarant were members of the conspiracy; and (3) the declaration was made during the course of and in furtherance of the conspiracy. Bell, 573 F.2d at 1043. If the district court finds that the government has failed to satisfy all three requirements, then the jury must be instructed to disregard the testimony, or a mistrial may be granted; otherwise, the testimony is deemed admitted. Id., at 1044.

While the district court perhaps failed to follow with precision the Bell requirements with respect to the cited testimony, we note that Engler did not ask the court to do so, and, more importantly, Engler was not prejudiced as the record reveals overwhelming evidence of the existence of a conspiracy which included Engler and Gatena and that all of the challenged statements were in furtherance of that conspiracy. United States v. Anderson, 243 F.3d 478, 483 (8th Cir. 2001) (Where the district court did not follow (nor was it asked to follow) the Bell requirements, a defendant suffers no prejudice where overwhelming evidence of the existence of a conspiracy exists and the relevant statements were made in furtherance of that conspiracy.).

Engler and Gatena also argue that the district court erred in admitting into evidence photographic images of text messages sent via cellular telephone to Engler from an unknown person while law enforcement officers were about to execute a search warrant on Engler's residence. They assert that the government failed to show that the unknown declarant who sent the text messages was a co-conspirator. However, the very content of the text messages establishes by a preponderance of the evidence that the sender was a coconspirator. See United States v. Beckman, 222 F.3d 512, 523 (8th Cir. 2000) (coconspirator's statement may itself be used to determine that a conspiracy existed). The text messages instruct Engler to quickly "clean" and "flush" because the "cops [are] outside." In advising Engler of the presence of officers, the declarant goes on to specify there are "2 out front" and "1 at back door around corner." We find no abuse of discretion in the admission of this evidence.

V.

Next, Gatena argues that the trial court erred in denying his motion for acquittal because there was insufficient evidence to prove that he aided and abetted the attempt to manufacture more than 50 grams of methamphetamine on December 30, 2004. Specifically, Gatena argues that there was insufficient proof to establish that the attempt to manufacture on that date would have produced more than 50 grams of methamphetamine. We note, however, that the indictment alleges that the attempted manufacture of December 30, 2004, was to produce more than *5 grams*, not more than *50 grams*, of methamphetamine.

Federal Rule of Criminal Procedure 29 provides that a district court shall enter a judgment of acquittal only if the evidence presented at trial was insufficient to sustain a conviction. A district court must consider a motion for judgment of acquittal with "very limited latitude" and must neither assess the witnesses's credibility nor weigh the evidence. United States v. Johnson, 474 F.3d 1044, 1048 (8th Cir. 2007). We must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor and accepting all reasonable inferences drawn from the evidence supporting the jury's verdicts -- if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt, then we must uphold the jury's verdict. Id.

The record reflects there was more than enough evidence to support Gatena's conviction for the December 30, 2004, attempt to manufacture more than 5 grams of methamphetamine. Gatena's truck was parked in front of Engler's residence. In plain view, officers observed seven transparent trash bags in the back of his truck which contained large quantities of trash common to a methamphetamine lab. Further, the evidence revealed that: Gatena previously sold methamphetamine out of Engler's house; at some point, Gatena had resided with Engler in the residence to be searched;

-13-

Gatena allowed Engler to use his truck on December 28, 2004; when Engler used Gatena's truck she purchased pre-cursors, such as matches and pseudoephedrine, at a local grocery store and Walgreens pharmacy; mail and other items belonging to Gatena were found inside the residence and the truck; evidence of the manufacture of methamphetamine was found inside the residence; and the trash bags in the back of Gatena's truck contained hundreds of matchbooks and empty blister packs representing 2,016 pseudoephedrine pills which could theoretically yield 55 grams of methamphetamine. Additionally, the jury had the opportunity to weigh Gatena's credibility. While Gatena claimed that he and Engler were out of town from December 28th through the 30th, and that he had no involvement in the lab or the waste found in his truck or the house, the grocery store manager testified that he saw Engler using Gatena's truck when she bought the matches on December 28, 2004. Finally, the trash contained a receipt for the purchase of the pseudoephedrine on December 28, 2004, from the Walgreens Pharmacy located near the grocery store where Engler purchased the matches on the same day. Viewing the evidence in the light most favorable to the verdict, we cannot find that the trial court erred in denying Gatena's motion for acquittal as to this count.

## VI.

Lastly, Gatena argues that the district court erred in determining the drug quantity for which he should be held accountable because the government failed to establish the amount by a preponderance of the evidence. Gatena argues that the government presented evidence of only 0.97 grams of actual methamphetamine with a marijuana equivalent of 19.40 kilograms, which would be a base offense level of 16 for Guidelines purposes, while the district court adopted the presentence report calculation of 995.28 grams of pseudoephedrine which translates to a base offense level of 36. Gatena argues that there is no corroborative evidence of that amount, and

the government failed to meet its burden of proof.  We will uphold a sentencing court's drug quantity calculation unless it is clearly erroneous.  United States v. Serrano-Lopez, 366 F.3d 628, 638 (8th Cir. 2004).

Gatena has failed to establish that the district court's finding as to the drug quantity for sentencing purposes was clearly erroneous.  Gatena was "well positioned within the conspiracy to appreciate the scope of the conspiracy and the quantities involved," and the sentencing court properly found, by a preponderance of the evidence, that his activity involving the drugs attributed to him was in furtherance of the conspiracy and either known or reasonably foreseeable to him. See United States v. Ramon-Rodriguez, 492 F.3d 930, 942 (8th Cir. 2007), cert. denied, 128 S.Ct. 938 (2008).  The district court correctly held Gatena responsible for the precursors and methamphetamine obtained, used and manufactured by his coconspirators. See United States v. Cordova, 157 F.3d 587, 599 (8th Cir. 1998)(defendant responsible not only for all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured and willfully caused by himself, but also for all reasonably foreseeable acts and omissions of coconspirators in furtherance of the joint criminal activity).  Gatena was also properly held accountable for precursors his coconspirators obtained for his use in manufacturing methamphetamine. See United States v. Voegtlin, 437 F.3d 741, 748-49 (8th Cir.) cert. denied, 127 S. Ct. 368 (2006) ("Under the guidelines, in a jointly undertaken criminal activity, a defendant's sentence is determined based on all reasonably foreseeable acts of others taken in furtherance of the jointly undertaken criminal activity.").  The evidence before the district court was that:  (1) Engler and Gatena purchased pseudoephedrine, Heet and matches "almost daily" at a local convenience store in 2004; (2) coconspirators testified to making at least 25 trips to Madison, Wisconsin in the summer and fall of 2004, where they obtained between 1000 to 3000 pseudoephedrine pills per trip, each of which was capable of producing 55 grams of methamphetamine per week; (3) 2,504 empty pill blister packs which represents 93 grams of pseudoephedrine were seized at Gatena's home on November 18, 2004; (4) 2,016 empty pill blister packs, representing 60 grams of pseudoephedrine, were seized from Gatena's truck on December 30, 2004; and, (5)

over 1000 empty pill blister packs, representing 38.8 grams of pseudoephedrine, were seized at Engler's home on June 5, 2005. Thus, we find that the district court did not err in attributing Gatena with a drug quantity that translated to a base offense level of 36 under the Guidelines.

VII.

Accordingly, we affirm the judgment of the district court.

―――――――――