# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

No.  98-1168, 1169, 1170, 1214
_____

| | |
|---|---|
| United States, | * |
| | * |
| Plaintiff-Appellee, | * |
| | *  Appeals from the United States |
| v. | *  District Court for the District |
| | *  Of Nebraska |
| Leon Delmar Milton, etc., | * |
| Ludia Gajewski, etc., | * |
| Jeffrey Sean Mitchell, etc., and | * |
| Ernest Thornton, etc. | * |
| | * |
| Defendants-Appellants. | * |

_____

Submitted:  June 8, 1998
Filed:  August 24, 1998

_____

Before LOKEN, Circuit Judge, GODBOLD,[1] and HEANEY, Senior Circuit Judges.

_____

GODBOLD, Senior Circuit Judge:

_____

[1]The HONORABLE JOHN C. GODBOLD, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

Defendants Leon Delmar Milton, Lydia Gajewski, Jeffrey Mitchell, and Ernest Thorton were convicted of conspiracy to possess with intent to distribute and conspiracy to distribute cocaine base in violation of 21 U.S.C. § 841 (a)(1) & 846 in the United States District Court for the District of Nebraska. They appeal their convictions, contending that the district court erred in denying their motion to suppress evidence and in denying their motion for a <u>Franks</u> hearing. Leon Milton and Jeffrey Mitchell also appeal their sentences.

## I. Background

On December 22, 1995, federal agent William Nellis submitted an affidavit to the district court applying for an order authorizing the interception of wire communications over a telephone number that the FBI suspected was being used to conduct drug transactions in Omaha, Nebraska. The application for a wiretap was part of an investigation into the activities of suspected drug dealers in the Omaha vicinity. The investigation was initiated after the agents received tips from a paid informant claiming to have knowledge of illegal drug activity.

The order authorizing a thirty day interception was granted and the wiretapping began on December 26. A thirty day extension was granted on January 26, 1996. Federal agents intercepted numerous phone calls from the wiretapped residence. Presented with these calls as evidence, a federal grand jury returned an indictment against the four defendants in this case, as well as several other individuals who are not parties to this appeal.

The defendants moved the district court to disclose the identity of the informant upon whom the affidavit relied and to suppress the evidence derived from the interception of the wire communications. The defendants asserted that the Nellis affidavit did not support a finding of probable cause and did not make a showing of necessity as required by 18 U.S.C. § 2518(3)(a)-(d), which authorizes wiretapping

2

by federal officials in some circumstances. The defendants also attacked the veracity of the Nellis affidavit and requested a <u>Franks</u> hearing to determine whether federal agents had recklessly disregarded the truth in preparing the affidavit. The district court denied all of these motions.

The defendants then entered conditional pleas of guilty and were sentenced: Milton to 360 months, Mitchell to 292 months, Thorton to 136 months and Gajewski to 120 months. This appeal followed.

## II. Discussion

All defendants contest the Nellis affidavit and order allowing the wiretap and some contest aspects of their sentences.

A. Probable Cause

The probable cause required for allowing electronic interception of wire communications is the same as that required by the Fourth Amendment for a search warrant. <u>See</u> <u>U.S. v. Macklin</u>, 902 F.2d 1320, 1324 (8th Cir. 1990); <u>U.S. v. Leisure</u>, 844 F.2d 1347, 1354 (8th Cir. 1988). Our duty as the reviewing court is only to ascertain that the district judge issuing the order had a "substantial basis for ... conclud[ing]" that probable cause existed. <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39, (1983). To that end we must determine that the affidavit included facts that would allow the issuing judge to believe (1) that an individual had committed or was about to commit a particular offense, (2) that communication relating to that offense would be intercepted, and (3) that the residence was being used in connection with that offense or was commonly used by those whose communications were to be intercepted. <u>See</u> <u>Leisure</u>, 844 F.2d at 1354 (citing Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510- 2520.). In determining probable cause we are bound to consider only the facts contained within the four

corners of the affidavit. [2] U.S. v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995).

The Nellis affidavit was primarily based on the statements of a confidential informant, referred to by the affidavit as Source One. The affidavit explained that Source One had cooperated with federal agents on previous occasions and that the information provided by Source One had led to numerous arrest and convictions. Source One described many instances of drug activity at the house where the wiretap was to be administered. Source One named individuals involved and described conversations that she was a party to or overheard which detailed drug transactions and shipments. Some of the conversations described concerning drug shipments and transactions occurred over the phone line that was to be tapped. The affidavit stated that Source One had personally observed one of the suspects with cocaine and that she had seen two females pick up an amount of cocaine or crack from the residence where the wiretap was to be installed.

The affidavit contained information from three other sources as well. These other sources provided information regarding members of the conspiracy and indicating that these members were involved in the illegal drug trade. Agent Nellis also included in the affidavit the phone numbers and pager numbers of several members of the alleged conspiracy. He reported pen registers that showed that calls were made from the residence to be tapped to each of the members of the conspiracy.

This evidence was sufficient for the issuing district judge to find probable cause

---

[2]Determining probable cause requires us to put ourselves in the place of the district court and decide whether that court had sufficient information before it to find probable cause. Because we review probable cause only on the basis of facts contained within the affidavit, as does the district court, as part of the instant inquiry we do not address the appellants' assertions that the affidavit contained false statements. Questions of veracity must be considered only within the purview of a Franks v. Delaware hearing.

to believe that the individuals in question were committing crimes, that the residence to be tapped was being used to commit the crimes and that communications relating to the offenses would be intercepted by the wiretap. We find no error in the district court's order denying the defendant's motion for suppression of the wiretap evidence based on a lack of probable cause.

B. Necessity

The defendants also sought to suppress the wiretap evidence on the ground that the order granting the application for interception failed to meet the requirements for wiretaps set out in 18 U.S.C. § 2518(3). This statute allows a judge to enter an order allowing a wiretap where the following conditions are met:

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
> (d) . . . there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3)(a)-(d). Defendants contend that the affidavit was deficient because it did not sufficiently describe the traditional investigative procedures previously tried and why these procedures failed, making the wiretap necessary.

5

The affidavit describes traditional investigative techniques and explains why these techniques do not normally prove successful when targeting drug conspiracies. Most of the assertions would be true in any drug investigation. The reasons given include witnesses' fear in answering questions and propensity of individuals to plead the Fifth; the fact that normal surveillance only exposes meetings between individuals, leaving agents to guess at the purpose of the meetings; the residential nature of the neighborhood precludes agents from remaining near the suspicious residence; and that phone records only reveal that conversations between individuals took place but do not reveal the nature of the conversations. The only reason given that was specific to this particular investigation was that the suspects kept the trash container for the residence on the front porch, making it impossible for agents to search the garbage.

Although some of these assertions might appear boilerplate, the fact that drug investigations suffer from common investigatory problems does not make these problems less vexing. Drug crime is necessarily harder to detect than other crimes because it is difficult to witness and does not create victims who are compelled to come forward and report the crime. Furthermore, agents preparing the affidavits supporting applications for electronic surveillance are not required to exhaust "all possible investigative techniques" before a court can issue an order authorizing interception of wire communications. U.S. v. Falls, 34 F.3d 674, 682 (8th Cir. 1994). The necessity prong of § 2518(3)(c) is a finding of fact subject to a clearly erroneous standard of review. See U.S. v. Davis, 882 F.2d 1334, 1343 (8th Cir. 1989). We find no error in the district court's refusal to suppress the wiretap evidence based on a lack of necessity.

C. Veracity of the Affidavit

Although we find that the affidavit supporting the wiretap order is facially sufficient, a defendant may challenge an affidavit on the ground that the police

included deliberate or reckless falsehoods under Franks v. Delaware, 438 U.S. 154, 155-56 (1978), or deliberately or recklessly omitted material information under U. S. v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986). "In order to prevail on a challenge to a warrant affidavit under Franks, a defendant must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit, and (2) that the affidavit's remaining content is insufficient to establish probable cause." Gladney, 48 F.3d at 313. In order to be entitled to a hearing under Franks the defendant must make a "substantial preliminary showing" of a false or reckless statement or omission and must also show that the alleged false statement or omission was necessary to the probable cause determination. U. S. v. Fairchild, 122 F.3d 605, 610 (8th Cir. 1997), cert. denied, Leisinger v. U.S., 118 S. Ct. 1086 (1998). The "substantial preliminary showing" requirement needed to obtain a Franks hearing is not lightly met. U.S. v. Hiveley, 61 F.3d 1358, 1360 (8th Cir. 1995).

In this case the defendants presented evidence that the affidavit included statements made by Source One that the affiant either knew or should have known were false. Specifically the defendants allege that Source One in a subsequent interview declared that she had never personally seen any drugs at the residence that was to be tapped and that she never told agents that she had personally seen drugs. At least two paragraphs of the affidavit include statements that Source One had personally seen a defendant use crack cocaine and that she had seen two young women actually picking up cocaine from the residence that was to be wiretapped. The defendants assert that these false statements are material and that without their inclusion probable cause did not exist. The defendants alternatively contend that even if Source One did, at one time, indicate to the agents that she had personally witnessed drug activity, the agents ignored her inconsistent statement that she did not witness any drug activity, thereby omitting concerns about her veracity and

7

reliability.[3]

By presenting evidence that Source One did not actually witness any drug activity, the defendants met the first burden required in the preliminary showing necessary to obtain a <u>Franks</u> hearing, that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit. However, because the affidavit's remaining content is sufficient to establish probable cause, the district court did not err in refusing to grant the <u>Franks</u> hearing. Even omitting the two paragraphs that describe Source One's personal observation of drugs and adding statements that she was a paid informant who escaped prosecution as a result of her information, the affidavit contained ample information for the court to find probable cause to support a wiretap order. The affidavit contained numerous paragraphs depicting conversations that Source One heard describing drug activity and transactions, including conversations that took place over the phone line in question. Additionally Source One described the logistics of the drug operation, detailing the structure of the conspiracy and explaining how drugs were transported from California to Nebraska.

The affidavit also included the statements of Terry Ford, Joyce French, and another confidential informant known as Source Two. These sources provided additional information about the drug conspiracy including how the drugs were

---

[3]The defendants also challenge several other omissions and allegedly false statements in the affidavit including that the affidavit did not report that Source One was a paid informant who avoided prosecution by virtue of her testimony, that Source One heard that Milton was supposed to be in the real estate business, and that the phone line to be tapped had been disconnected for a time thereby preventing its use to facilitate drug deals. Even considered cumulatively with the statements concerning whether Source One actually saw drugs, we find no error in the district court's decision to deny the motion for a <u>Franks</u> hearing because these statements and omissions do not rob the affidavit of its ability to provide probable cause.

transported to Omaha, where they were stored in Omaha, and specific information about the activities of individual members of the conspiracy. When this information is combined with that provided by Source One and the agents' surveillance of the residence and pen register information, a judge could have found that the affidavit provided probable cause to believe that a crime was being committed, the residence in question was being used to facilitate the crime and that interception of wire communications from this residence would provide evidence of the crime. We find no abuse of discretion in the district court's ruling that the defendants had not made the substantial preliminary showing required for a Franks hearing.

D. Sentencing Issues

I. Milton

Milton was sentenced to 360 months imprisonment. He contends that the court erroneously enhanced his sentence calculation by four points for his role in the conspiracy as an organizer or leader under U.S.S.G. § 3B1.1(a). The probation officer who prepared Milton's presentence report recommended a role enhancement, but both Milton and the government objected to this finding because the government had agreed, as part of Milton's plea agreement, that it would not seek a role enhancement. The district court overruled the objections of both parties and agreed with the probation officer, finding the evidence of Milton's role as a leader to be sufficient to apply the 3B1.1 enhancement.

Milton asserts that the court's action was an abuse of discretion because the government bears the burden of proof on role enhancements. Objections to a finding contained in a presentence report require the government to present further evidence as to why the finding is warranted. In this case the government presented no such evidence. However, the district court found, after independently considering the evidence presented at the sentencing hearing, that Milton was indeed an organizer or

leader of the conspiracy and that the conspiracy consisted of at least five people. Nothing in the guidelines prevents a court from using its discretion to determine that sufficient evidence exists to support an enhancement when that enhancement is recommended in a presentence report. Cf. U.S. v. Adipietro, 983 F.2d 1468, 1473 (8th Cir. 1993) (presentence report provided adequate notice that the court might sua sponte enhance the sentence for the defendant's role as a supervisor); U.S. v. Adams, 938 F.2d 96, 99 (8th Cir. 1991) (holding that the government is not required to give defendant notice of enhancement where the presentence report identified the enhancement as applicable and calculated a guideline sentencing range using that section). In this case the district court made the proper findings of fact required by the guidelines to enhance Milton's sentence for his role as a supervisor. See U.S.S.G. § 3B1.1(a) & comment. Because these findings are not clearly erroneous and are supported by the evidence, we find no error in the court's decision to enhance Milton's sentence for his role as a leader.

Milton also contests other aspects of his sentence including his classification as a career offender and the drug amount attributed to him. Neither of these contentions has merit. The district court made specific findings of fact regarding Milton's career offender status and the amount of drugs it attributed to him. It found that Milton had the requisite two separate felony convictions to make him a career offender.[4] The district court also found that sufficient evidence existed to attribute a substantially larger amount of drugs to Milton than the two kilograms upon which he was sentenced. Because neither of these findings was clearly erroneous, we affirm Milton's sentence.

---

[4]Milton's contention that his two prior felony convictions were not separate has no merit despite the fact that the two offenses, which were committed more than a year apart, were joined in 1990 for the purpose of a probation revocation proceeding. The district court properly considered these two offenses as separate under U.S. v. Jones, 87 F.3d 247, 248 (8th Cir.)(rejecting a similar argument), cert. denied, 117 S. Ct. 374 (1996).

(ii) Mitchell

Jeffrey Mitchell challenges several aspects of his sentence but because we vacate his sentence as erroneously based on an improper amount of drugs we reach only that issue.

Mitchell asserts that the sentencing court erred by attributing more than 1.5 kilograms of crack cocaine to him and calculating his base offense level at a 38. After examining the record, we agree. In determining Mitchell's base offense level, the court attributed to Mitchell one kilogram of crack cocaine from a transaction that supposedly took place in January of 1996. According to the district court Leon Milton gave this kilogram to Kevin Jameson in the presence of Jeffrey Mitchell. However, in its case against Derek Vernon, one of Mitchell's co-conspirators, the government offered a written stipulation of fact stating that Leon Milton was absent from the state of Nebraska at all times during the month of January 1996.[5] According to this stipulated fact, the transaction involving one kilogram of crack attributed to Mitchell could not have taken place.

"Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S. v. Brown, 19 F.3d 1246, 1248 (8th Cir. 1994)(citing U.S.S.G. § 2D1.1,

---

[5]Vernon was a co-defendant of the appellants who was indicted at the same time and whose case was joined with theirs. The written stipulation of fact in question was submitted in Vernon's case after Mitchell filed his notice of appeal. Mitchell moved this court to supplement the record on appeal with this stipulation document. The motion was carried with the case. The government concedes in its brief that the stipulation contradicts the district court's finding of fact and that the drug transaction attributed to Mitchell in January 1996 could not have happened. Therefore, we grant Mitchell's motion to supplement the record with the Vernon-government stipulation.

comment. (n. 12);. Although the government bears the burden of establishing quantity, in approximating amount the court can rely upon an estimate of drug quantity that has sufficient accuracy. See U.S. v. Logan, 54 F.3d 452, 455 (8th Cir. 1995); U.S. v. Wayne, 903 F.2d 1188, 1197 (8th Cir. 1990). We review the district court's determination of a drug quantity for sentencing purposes for clear error. U.S. v. Ayers, 138 F.3d 360, 363 (8th Cir. 1998)(citing 18 U.S.C. § 3742(e)).

In this case the district court's determination of drug amount was clearly erroneous because it contradicted facts that were stipulated to by the government and a party. The district court specifically stated that it found only two instances where an amount of crack cocaine present was attributable to Mitchell. Because one of those instances is not supported by the evidence and contradicts the factual record, we must vacate Mitchell's sentence and remand this case for a new sentencing hearing. See U.S. v. Magee, 19 F.3d 417, 423 (8th Cir. 1994)(vacating and remanding sentence where it could find no adequate basis for amount attributed to defendant); U.S. v. Simmons, 964 F.2d 763, 776-77 (8th Cir. 1992)(vacating sentence where evidence relied upon to establish amount was unreliable).

### III. Conclusion

We affirm the judgment of conviction for all appellants and affirm Leon Milton's sentence. We vacate Jeffrey Mitchell's sentence and remand his case to the district court for resentencing.

A true copy

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

12