# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3495

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Arthur Lee Crissler, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 10, 2008
Filed: August 25, 2008

_____

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Pursuant to a search warrant, law enforcement officers searched Arthur Crissler's residence and recovered a supply of methamphetamine, marijuana, drug paraphernalia, and a firearm. Based on this evidence, the government indicted Crissler on two counts of possession of a controlled substance[1] with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Crissler moved to suppress the evidence obtained from the search and

_____

[1]Count one was for the methamphetamine; count two was for the marijuana.

sought a *Franks*[2] hearing before the district court,[3] but the district court denied both requests. Subsequently, a jury convicted Crissler of all three counts. The district court sentenced Crissler to 97 months' imprisonment, followed by 48 months' supervised release. Crissler appeals the district court's denial of a *Franks* hearing on his motion to suppress. We affirm.

## I. *Background*

On July 26, 2006, Gene Wilkie, a former confidential informant (CI), was arrested on outstanding warrants. In an attempt to reduce his charges, Wilkie implicated Crissler as a suspected drug dealer, which confirmed law enforcement authorities' suspicions about Crissler. In fact, authorities had conducted surveillance on Crissler's residence as recently as the day before Wilkie's arrest.

Wilkie informed the officers that: (1) he had been dealing drugs for Crissler for the last month; (2) he had been at Crissler's house that morning; (3) he had personally seen a quarter pound of methamphetamine in a green pouch that Crissler had on his person and a pound and a half of marijuana in a cooler in the basement of Crissler's residence; (4) there was methamphetamine in a black sport utility vehicle parked in the driveway of Crissler's residence; and (5) Crissler was a gun collector, and there were guns throughout Crissler's residence. After receiving this information, Ben Leingang, of the North Dakota Bureau of Criminal Investigation and Metro Area Safe Trail Task Force, and Ray Eisenmann, a police officer with the Mandan, North Dakota Police Department assigned to the drug task force, drove by Crissler's address and observed a black sport utility vehicle in Crissler's driveway. A check of the vehicle's license plate number confirmed that the vehicle was registered to Crissler.

---

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

[3]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

With the information received from Wilkie, combined with the information compiled from their existing investigation, authorities applied for a search warrant for Crissler's residence. That same day a state court judge conducted a hearing on the application and received testimony from Leingang and Eisenmann. Leingang testified that for the previous five or six months his task force had received information from law enforcement agencies of suspected drug trafficking at Crissler's residence. Leingang testified that he periodically conducted surveillance of Crissler's residence and had observed a number of individuals coming and going from the residence at various hours of the day and night. Further, Leingang testified that he had performed surveillance on Crissler's residence the night before Wilkie's arrest and again observed a number of vehicles in the driveway and on the streets near the residence. Based on his training and experience, Leingang testified that the quantity and frequency of individuals and vehicles visiting the residence correlated with drug trafficking.

Eisenmann, who had assisted with the arrest of Wilkie earlier that day, testified that Wilkie had previously worked as a CI and had provided Eisenmann with reliable information regarding drug activities that led to the arrest of three individuals. Eisenmann also testified that Wilkie had been deactivated from his CI status, but he was not asked, nor did he disclose, the reasons for Wilkie's deactivation. Further, Eisenmann testified that Wilkie had been arrested that morning on failure to appear warrants and informed the judge that at the time of his arrest, Wilkie was in possession of drug paraphernalia, including a scale with methamphetamine residue on it. Eisenmann also testified that he had no reason to believe that the information Wilkie had provided was unreliable. At the conclusion of the hearing, the judge found probable cause and issued a search warrant for Crissler's residence.

Upon executing the search warrant, the officers recovered substantial amounts of marijuana and methamphetamine; most of the drugs were found hidden inside a big screen television console in the basement of Crissler's home. The officers also located drug paraphernalia and a firearm in the residence.

Crissler was arrested and subsequently indicted on two counts of possession of a controlled substance with intent to distribute and one count of possession of a firearm by an unlawful user of a controlled substance. Crissler moved to suppress the evidence obtained from the search of his residence and requested a *Franks* hearing. Crissler asserted that Eisenmann omitted relevant information from his testimony in support of the warrant. Specifically, Crissler argued that Eisenmann did not disclose information detracting from Wilkie's reliability and failed to corroborate Wilkie's information before presenting it to the issuing judge. The district court denied Crissler's request for a *Franks* hearing and denied the motion to suppress. Crissler was subsequently convicted by a jury of all three counts and sentenced by the court to 97 months' imprisonment.

## II. *Discussion*

Crissler does not challenge the district court's finding of probable cause to issue the search warrant. Rather, he challenges the district court's denial of his request for a *Franks* hearing on the ground that Eisenmann deliberately or recklessly omitted material information from the warrant application. Crissler also challenges Eisenmann's testimony in support of the warrant and avers that Eisenmann failed to adequately corroborate the information Wilkie provided before presenting it to the issuing judge. "We review the denial of a request for a *Franks* hearing for abuse of discretion." *United States v. Jansen*, 470 F.3d 762, 766 (8th Cir. 2006).

"In order to be entitled to a hearing under *Franks* the defendant must make a 'substantial preliminary showing' of a false or reckless statement or omission and must also show that the alleged false statement or omission was necessary to the probable cause determination." *United States v. Milton*, 153 F.3d 891, 896 (8th Cir. 1998) (citing *United States v. Fairchild*, 122 F.3d 605, 610 (8th Cir.1997)). "Such a showing is not easily made." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008); *see also Milton*, 153 F.3d at 896 ("The 'substantial preliminary showing' requirement needed to obtain a *Franks* hearing is not lightly met"). Because Crissler did not make

a substantial preliminary showing that a *Franks* violation had occurred, the district court did not abuse its discretion by denying his request for a *Franks* hearing.

Crissler first contends that he is entitled to a *Franks* hearing because Eisenmann failed to inform the court of the specific circumstances surrounding Wilkie's past performance as a CI and the reasons for Wilkie's deactivation from CI status. Further, Crissler asserts that Eisenmann should have clearly testified that Wilkie: was not acting as a CI at the time he provided the information about Crissler; had been deactivated from his CI status because he failed to make any controlled purchases or stay in contact with his handler—conditions required of him to retain the status; and only provided the information about Crissler after he was arrested and in an attempt to avoid his own criminal charges.

These alleged omissions do not meet the "substantial preliminary showing" required by *Franks* for several reasons. First, Eisenmann testified that Wilkie was not an active CI. Wilkie's deactivation occurred because he failed to live up to the terms of his CI agreement, but Wilkie's lack of compliance did not mean the information he provided was not reliable. Second, Eisenmann informed the court that Wilkie was providing information about Crissler after Wilkie's arrest; yet, even if this fact had been omitted it would not have entitled Crissler to a *Franks* hearing. *See United States v. Gabrio*, 295 F.3d 880, 884 (8th Cir. 2002) ("[T]ipsters often provide information in the hopes of obtaining leniency with respect to their own situation and that does not necessarily mean they are unreliable"). Third, Crissler made no offer of proof that the alleged omissions were intentionally or recklessly omitted. *See United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under *Franks*]."); *Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."); *see also Engler*, 521 F.3d at 970 (affirming denial of *Franks* hearing

requested on basis of officer's omissions, noting that defendant made "assertions without any supporting proof that they [were] accurate . . . provided no evidence to establish that . . . officers deliberately or recklessly omitted information . . . [and] did not provide an explanation for the absence of such evidence").

Additionally, Eisenmann adequately corroborated the information provided by Wilkie. Eisenmann confirmed Wilkie's tip that there was a black sport utility vehicle parked in Crissler's driveway and verified that the vehicle was in fact registered to Crissler. *See United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992) ("[W]here the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause."); *United States v. Dennis*, 625 F.2d 782, 791 (8th Cir. 1980) ("The credibility of an informant may be established by corroboration . . . of only parts of an informant's story."); *see also United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006) ("When an informant has provided reliable information in the past or where the tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination"). In sum, Crissler failed to meet his preliminary burden under *Franks*, and thus the district court did not abuse its discretion in denying the requested *Franks* hearing.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____